FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

00 AUG -1

U.S. DISTRICT COURT
N.D. OF ALABAMA

KATHY DIANE EATON,          )
                            )
      Plaintiff,            )
                            )
v.                          ) CIVIL ACTION NO. 97-PWG-2234-NE
                            )
GOODYEAR DUNLOP TIRES       )
NORTH AMERICA, LTD.,        )
                            )
      Defendant.            )

ENTERED

AUG - 1 2000

## MEMORANDUM OF OPINION

Kathy Diane Eaton, hereinafter referred to as plaintiff, sued defendant Goodyear Dunlop Tires North America, Ltd.[1] for violation of the Americans with Disabilities Act (ADA). In the complaint plaintiff also stated state law claims for wrongful discharge and outrage; however, the parties have stipulated to the dismissal with prejudice of the state law claims pursuant to Rule 41(a)(1) of the *Federal Rules of Civil Procedure*. (Document #32). The parties have consented to the magistrate judge's jurisdiction pursuant to 28 U.S.C. § 636(c). (Documents #54 and #55). This matter is currently before the magistrate judge on defendant's motion for summary judgment. (Document #36).

Summary judgment is appropriate only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Rule 56, *Federal Rules of Civil Procedure*. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish

---

[1]   Goodyear Dunlop Tires North America, Ltd. was substituted for the Dunlop Tire Corporation as defendant. (Documents #57 and #58).

his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [Citation omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

898 F.2d at 1532.

The following relevant facts are undisputed or, if disputed, viewed in the light most favorable to plaintiff. The plaintiff was hired by the defendant as a bulge and dent operator in September 1992 at its Huntsville, Alabama tire production facility. (Plaintiff's depo, pp.75-76). The plaintiff suffered an "on job" injury to her knee and [sic] in November of 1992. (Plaintiff's depo., p.80). After her knee surgery, the plaintiff was placed in what is typically referred to as

temporary alternative duty pursuant to the employer's Collective Bargaining Agreement. (Plaintiff's depo., p.82). The plaintiff was restricted in her employment tasks to lifting no more than 35 pounds, limited stair climbing, repetitive bending, stooping, and no crawling. (Plaintiff's Exhibits 1 and 2).

In defendant's Huntsville plant, an injured employee whose condition has not yet stabilized is eligible to be assigned Temporary Alternate Duty tasks. (Hartman Decl., ¶ 2). Temporary Alternate Duty may exist because of excess work in a classification, because of absences of regular employees in that classification, or because of work that does not fall into any classification. (Hartman Decl., ¶ 2). After her knee surgery in January, 1993, plaintiff was assigned several Temporary Alternate Duty (light duty) tasks, pursuant to the collective bargaining agreement, until her condition stabilized. (Plaintiff's depo., p.82; Ledsinger declaration, ¶ 2). Pursuant to the medical placement provisions, Section 9.06, of defendant's collective bargaining agreement, an employee who can no longer perform the duties of her job can move to any vacant job that falls within the employee's medical restrictions. (Hartman declaration, ¶ 7, Exhibit 4). If there are no such vacancies, the medically restricted employee can "bump" a less senior employee from a job that is within the medically restricted employee's restrictions. (Hartman declaration, ¶ 7). If there are no positions under the medically restricted employee's seniority that fall within her medical restrictions, but there are jobs in the plant filled by more senior employees that fall within her medical restrictions, she will be laid off and placed on the recall list, pursuant to Section 9.09(D) of the collective bargaining agreement. (Hartman declaration, ¶ 7, Exhibit 5). Under the agreement, there is no right to bump a more senior employee to achieve a medical placement. (Hartman declaration, ¶ 7).

After plaintiff's knee condition stabilized, she was medically placed into a Labeler position on August 4, 1993, bumping a junior employee pursuant to Section 9.06 of the collective

bargaining agreement. (Plaintiff's deposition, pp.82-83, Exhibit 3; Ledsinger declaration, ¶ 2). In early 1994 plaintiff informed defendant that she was not physically able to perform the Labeler job, so she was again assigned various Temporary Alternate Duty tasks. (Plaintiff's deposition, pp.84-85; Ledsinger declaration, ¶ 3).

There was a labor strike at defendant's Huntsville facility from June through September, 1994, during which time plaintiff did not report to work. (Plaintiff's deposition, p.87; Ledsinger declaration, ¶ 3). After the strike, defendant began its efforts to locate another regular position for plaintiff consistent with her medical restrictions by first looking at vacant positions which plaintiff could perform. (Plaintiff's deposition, p.87; Ledsinger declaration, ¶ 3). The only vacancies were for tire building positions, which require repetitive squatting, climbing, and kneeling; and thus, fell outside plaintiff's medical restrictions. (Ledsinger declaration, ¶ 3). Defendant next looked at all jobs below plaintiff's seniority, pursuant to the medical placement provisions of defendant's collective bargaining agreement. (*Id.*) Mr. Ledsinger, defendant's former Labor Relations Manager, instructed defendant's Safety and Training Specialists to review all the jobs in the plant and identify the positions into which plaintiff could be transferred on a regular-duty basis. (*Id.*, ¶ 4). The Safety and Training Specialists concluded that plaintiff's medical restrictions would only permit her to perform the duties of a Stock Mixing Planner (also called Scheduler) or clerical duties. (*Id.*, ¶ 4, Exhibit 1). However, plaintiff could not be placed into either of these positions because she did not meet the minimum education or experience qualifications for such positions. (*Id.*, ¶ 4, Exhibit 2 and 3, Plaintiff's depo., p.66). Plaintiff also did not have enough seniority to bump other employees from these positions. (Ledsinger declaration, ¶ 8, Plaintiff's depo., p.95). Nevertheless, the plaintiff was placed in the position of a scheduler/stock mixing

planner where she remained for approximately 3 months. Defendant removed her from this position as she did not meet the minimum educational qualifications for such a position.

On October 28, 1994 Mr. Ledsinger wrote a letter to Ron Hollingsworth, Vice President of the Union representing production employees at defendant's Huntsville facility, in which Mr. Ledsinger described the efforts of Safety and Training Specialists to identify a production job for plaintiff; explained that plaintiff's medical restrictions would allow her to perform only planning or clerical work, but that she did not meet the minimum education or experience requirements to perform such work; and requested the Union, through its bargaining committee and with plaintiff, first to review all jobs below plaintiff's seniority level, and then all the jobs in the plant to identify jobs which plaintiff could perform on a regular basis. (Ledsinger declaration, ¶ 5, Exhibit 4).

On December 1, 1994 Mr. Ledsinger met with plaintiff and Max Wright, a Union official, to review defendant's placement efforts and to request that Mr. Wright and plaintiff review all jobs below her seniority and identify those which they felt plaintiff could perform given her medical restrictions. (Ledsinger declaration, ¶ 6, Exhibit 5; plaintiff's depo., pp.89-90). After doing so, they suggested the Skilled Repair position, bumping Sarah Burns, a junior employee. (Ledsinger declaration, ¶ 6, Exhibit 5; plaintiff's depo., pp. 95-96, 100). On December 6, 1994 Mr. Ledsinger met with plaintiff, Mr. Wright, and Mr. Hollingsworth and informed them that the Skilled Repair job was borderline within plaintiff's restrictions, but that defendant would medically place her into the position. (Ledsinger declaration, ¶ 7, Exhibit 6, plaintiff's depo., p.99).

On December 10, 1994 plaintiff bumped Sarah Burns and was transferred to a Skilled Repair position pursuant to the medical placement provisions (section 9.06) of defendant's collective bargaining agreement. (Ledsinger declaration, ¶ 7; plaintiff's depo., p.99). On February 15, 1995

Mr. Ledsinger informed plaintiff, in a meeting with union and company officials, that she had been "bumped" from her Skilled Repair position by an employee who had more seniority and medical restrictions which also limited him to working only in the Skilled Repair position. (Ledsinger declaration, ¶ 8, Exhibit 7; plaintiff's depo., pp.104-05). Although there were jobs in the plant which plaintiff could perform, they were filled and plaintiff could not bump anyone from them because she lacked the necessary seniority. (Ledsinger declaration, ¶ 8, Exhibit 7; plaintiff's depo., p.95). Plaintiff was laid off effective February 15, 1995 pursuant to defendant's collective bargaining agreement. (Ledsinger declaration, ¶ 8, Exhibit 8; plaintiff's depo., p.106). At this time, she was informed that there were no other positions available to accommodate her medical restrictions. (Plaintiff's depo., p.106). The defendant has hired approximately 250 employees since the lay off of the plaintiff. (Plaintiff's Exhibit 3). The defendant has had available some 20 jobs or tasks, with weight limits under 35 lb. requirements, with sedentary to light restrictions of sitting, bending, walking, climbing and twisting. The plaintiff has not been recalled to any jobs and has apparently been deleted from the seniority list. (Plaintiff's Exhibit 3).

Under the Collective Bargaining Agreement and policy of the defendant seniority is further defined by date of birth if the hire date is the same. Sarah Burns, who was hired on the same date as plaintiff but who was born after plaintiff, was retained in her position or employment with defendant when plaintiff was laid off.

By collectively bargained agreement, Dunlop pays employees on Temporary Alternate Duty a lower rate than employees working regular duty. (Hartman declaration, ¶ 4, Exhibit 1). An employee on Temporary Alternate Duty generally does not perform full scope of the job because of brief exposure to the job or because the regular employees perform the more difficult aspects of the job. (Hartman declaration, ¶ 3). Defendant does not provide training to individuals

so that they can meet the minimum requirements for clerical, production planning or other specialized positions; rather, individuals are required to have these skills when they apply for the positions. (Harman declaration, ¶ 6). Plaintiff does not have any college math or clerical training. (Plaintiff's depo., p.66). Plaintiff was able to perform the Skilled Repair position at the time of her layoff. (Plaintiff's depo., p.24). Plaintiff could perform the Mold Repair position at defendant's facility. (Plaintiff's depo., pp.86-87; 103-104). Plaintiff can cut, measure, and install vinyl siding, as she had done in a previous business she owned. (Plaintiff's depo., pp.124-25). Plaintiff can supervise a construction crew, as she had done for four years during previous employment, and supervise a production crew, which she had done for a two-year period during previous employment. (Plaintiff's depo., pp.129; 131-32). Plaintiff currently runs her own business, including preparing and submitting bids for work, cleaning, painting, mudding, caulking, and buying supplies. (Plaintiff's depo., pp.166-68; 156-57; 147-48). Plaintiff asserted in her complaint that she received her Notice of Right to Sue from the Equal Employment Opportunity Commission on or about May 29, 1997. (Complaint, ¶ 7). Plaintiff's complaint was filed on August 29, 1997). (Complaint.)

"In order to establish a *prima facie* case of discrimination under the ADA, a plaintiff must demonstrate that (1) he has a disability; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination as the result of his disability." *Gordon v. E. L. Hamm and Associates, Inc.*, 100 F.3d 907, 910 (11th Cir. 1996), *cert. denied,* 522 U.S. 1030 (1997). *See also Reed v. The Heil Company*, 206 F.3d 1055, 1061 (11th Cir. 2000). A person is disabled for ADA purposes if he has (1) a physical or mental impairment that substantially limits one or more of the major life activities, (2) a record of such impairment, or (3) is regarded as having such an impairment. *Gordon,* 100 F.3d at 911; 42 U.S.C. § 1983 12102(2).

Defendant argues that plaintiff has failed to prove the existence of a disability. Plaintiff responds that she is limited in her major life activities including employment because of restrictions placed on her limiting lifting to thirty-five pounds and moderate limitations to bending, stooping, and stair climbing and no crawling. (See plaintiff's response, unnumbered p.8).

In *Reed*, the Eleventh Circuit Court of Appeals declined to determine that similar restrictions established a disability but hinted that, under the right circumstances, it might find that such restrictions do constitute a disability. *Reed*, 206 F.3d at 1062. As in *Reed*, however, this court need not determine whether plaintiff's impairment is a disability within the meaning of the ADA because plaintiff has failed to establish that she is a "qualified individual." *Reed*, 206 F.3d at 1062.

> Determining whether an individual is "qualified" for a job is a two-step process. See C.F.R. pt. 1630 app. at 352-53. First, does the individual satisfy the prerequisites for the position; does the individual have sufficient experience and skills, an adequate educational background, or the appropriate licenses for the job? See id. Second, can the individual perform the essential functions of the job, either with or without reasonable accommodations? See id. The plaintiff has the burden of proving that reasonable accommodations were available. *See Holbrook*, 112 F.3d at 1526. Reassignment is only a reasonable accommodation if a position for which the plaintiff is qualified is available. *See Willis v. Conopco, Inc.*, 108 F.3d 282, 284 (11th Cir. 1997).

*Reed*, 206 F.3d at 1062.

Plaintiff asserts that twenty positions meet plaintiff's physical limitation requirements; however, she has not identified these positions by title nor has she shown that there were vacancies in these positions when she was laid off. Presumably the twenty positions which allegedly meet plaintiff's limitation requirements could be divined from plaintiff's exhibits; however, plaintiff has not specifically identified the positions which allegedly met her limitation

8

requirements. Even if twenty of these positions met her physical limitation requirements, there is no evidence that plaintiff met the other qualifications for those positions. In her deposition, plaintiff identified only three positions that were within her restrictions: scheduler (deposition, p.39, 92); skilled repair (deposition, pp.92-94), and mold repair (deposition, pp.85-87). Even though the scheduler position was within her restrictions, plaintiff was not qualified for this position.

Plaintiff further argues that she has "the prerequisite skills, experience and education necessary to perform her job even though it be in temporary placement with the Defendant, as a labeler, skill repair and in fact a scheduler" and that she is therefore entitled to a reasonable accommodation. (Plaintiff's response to motion for summary judgment, unnumbered p.8). Plaintiff has not identified what "reasonable accommodation" is sought. To the extent that plaintiff is arguing that a temporary position should be made permanent, the ADA does not require that a temporary position be made permanent. *Howell v. Michelin Tire Corporation,* 860 F. Supp. 1488 (M.D. Ala. 1994).

Further, plaintiff argues that defendant has

> hired approximately 250 persons since the lay off of the plaintiff. Many of these people who obviously would not have her seniority, have been placed in jobs that have weight lifting requirements of 35 lbs. and under.

Plaintiff's claim that she has not been re-called is not properly reviewable because it was not part of the EEO complaint nor was it set out in the complaint. *See Wu v. Thomas,* 863 F.2d 1543, 1547 (11th Cir. 1989); *Ray v. Freeman,* 626 F.2d 439, 443 (5th Cir. 1980), *cert. denied,* 450 U.S. 997 (1981). Further, even if this claim was properly before the court, plaintiff has not identified any persons hired with less seniority than her who have been placed in jobs with weight lifting

9

requirements of 35 pounds and under. Plaintiff has also not identified which of those jobs she would have been otherwise qualified for.[2]

Plaintiff appears to complain of her removal from the position as a scheduler based on insufficient educational qualifications. Any such complaint, however, is without merit as plaintiff worked in the scheduler position on temporary alternate duty. As previously noted, reasonable accommodation does not require that a temporary position be made permanent. Nor does reasonable accommodation require a waiver of job qualifications.

Finally, plaintiff argues that defendant breached company policy and the collective bargaining agreement[3] by retaining Sarah Burns ahead of plaintiff for employment. Defendant does not dispute that seniority is determined by hire date and that when two employees share the same hire date then birth date determines seniority as between those two employees. Plaintiff and Burns shared the same hire date of September 12, 1992; however, plaintiff had seniority over Burns based on her March 19, 1954 date of birth which preceded Burns' September 30, 1963 date of birth. (See plaintiff's Exhibit 4). While plaintiff was senior to Burns there is no allegation that Burns had any medical restrictions as plaintiff did or that Burns was not otherwise qualified for whatever position she held at the time of plaintiff's layoff. Plaintiff used her seniority to "bump" Burns from her position in skilled repair, and plaintiff was subsequently bumped by someone senior to her. While Burns was apparently placed in another position after being bumped, there is no evidence that she

---

[2] It would be reasonable that at some point plaintiff would no longer be subject to re-call; however, neither plaintiff nor defendant have indicated when a laid off employee is no longer subject to re-call.

[3] The court does not read plaintiff's complaint or response to the motion for summary judgment to argue that the ADA requires accommodations that contravene rights of other employees under a collective bargaining agreement. Further, the Eleventh Circuit Court of Appeals recently joined eight other circuits in holding "that an accommodation that contravenes the seniority rights of other employees under a collective bargaining agreement is unreasonable as a matter of law." *Davis v. Florida Power and Light Co.,* 205 F.3d 1301, 1307 (11th Cir. 2000).

was placed in a position for which plaintiff was qualified and from which plaintiff could once again bump her.

Because plaintiff has failed to carry her burden of establishing that she was a "qualified individual" within the meaning of the ADA, defendant's motion for summary judgment (document #36) is due to be granted..

A separate final judgment will be entered simultaneously herewith.

Done this the 1st day of August, 2000.

PAUL W. GREENE
UNITED STATES MAGISTRATE JUDGE